UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

                v.

BIN WEN a/k/a Ben,

                Defendant.

**DECISION AND ORDER**

6:17-CR-06173 EAW

───────────────────────────────

# INTRODUCTION

On April 7, 2020, defendant Bin Wen ("Defendant") filed an Emergency Motion for Release from Custody due to the national emergency and worldwide pandemic caused by the Coronavirus Disease-2019 ("COVID-19").[1] (Dkt. 99) (hereinafter "Defendant's Emergency Motion"). After considering the applicable factors set forth in 18 U.S.C. § 3553(a), the standard set forth at 18 U.S.C. § 3582(c)(1)(A), and the policy statement of the Sentencing Commission set forth at U.S.S.G. § 1B1.13, the Court issued an Order on April 10, 2020, granting Defendant's Emergency Motion. (Dkt. 106). The Court now issues this Decision and Order setting forth its reasons for granting Defendant's motion in further detail.

---

[1] On March 13, 2020, President Trump declared a National Emergency concerning COVID-19. Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020). According to the World Health Organization's website, as of April 12, 2020, there were 1,739,007 confirmed cases of COVID-19 worldwide, with 108,432 confirmed deaths and 213 countries impacted. *See* Coronavirus Disease (COVID-19) Pandemic, World Health Org., https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last visited Apr. 13, 2020).

## BACKGROUND

On February 2, 2018, Defendant pleaded guilty to a two-count Information charging (1) a violation of 18 U.S.C. § 1349 (conspiracy to commit wire fraud) and (2) a violation of 18 U.S.C. § 1957(a) (engaging in monetary transactions in property derived from specified unlawful activity). (Dkt. 43). The underlying criminal offense related to a fraudulent scheme whereby Defendant, along with his wife, arranged for funding from federal agencies and departments under false pretenses, totaling approximately $8.4 million. (Dkt. 43 at ¶ 4). On February 6, 2019, the Court sentenced Defendant to 33 months on each count, to run concurrently, with three years of supervised release to follow. (Dkt. 86). Defendant was also ordered to pay restitution of $5.5 million. (Dkt. 86 at 6).

On February 25, 2020, after serving his prison time at the Federal Correctional Institution Satellite Camp in Cumberland, Maryland, Defendant was transferred to a residential reentry center/halfway house, Hope Village, in Washington, D.C. (hereinafter "Hope Village"). (Dkt. 99 at 2). The Bureau of Prisons ("BOP") has calculated that Defendant's eligibility date for home confinement is July 21, 2020, and his anticipated release date to supervised release is October 28, 2020. (*Id.*). Hope Village has gained notoriety recently because of allegations concerning inadequate efforts to address the risks and spread of COVID-19, and a putative class action has been commenced on behalf of Hope Village residents in the District of Columbia District Court. *See* Complaint, *Williams v. Fed. Bureau of Prisons*, Case No. 1:20-cv-00890-RC, Dkt. 1 (D.D.C. Apr. 2, 2020).[2]

---

[2] The District Court denied the *Williams* plaintiffs' motion for a temporary restraining order, but reserved decision on the motion for a preliminary injunction and scheduled a

According to an article in *The Washington Post* published on April 11, 2020, Hope Village's federal contract will not be renewed after it expires at the end of this month. *See* Justin Wm. Moyer, *Longtime D.C. Halfway House Won't Renew Federal Contract*, Wash. Post (Apr. 11, 2020), https://www.washingtonpost.com/local/longtime-dc-halfway-house-wont-renew-federal-contract-norton-says/2020/04/10/75008b14-7b6f-11ea-8cec-530b4044a458_story.html.

Defendant is 48 years old and suffers from several pre-existing health conditions, including asthma, shortness of breath, severe vertigo dizziness, allergies, and sinusitis. (Dkt. 99 at 7; Dkt. 99-2; *see* Dkt. 83 at 3, ¶ 238). While much is still unknown about COVID-19, according to the Centers for Disease Control and Prevention:

> People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease.

People with Moderate to Severe Asthma, Ctrs. For Disease Control & Prevention (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

On March 20, 2020, almost 30 days after arriving at Hope Village, Defendant submitted a letter to Kendra Burk ("Director Burk"), Program Director at Hope Village, and to his case manager at Hope Village, Ms. Payne, requesting release to home confinement due to his health conditions and the risk of contracting COVID-19. (Dkt. 99-4; Dkt. 105 at ¶¶ 4-5). That same day, Ms. Payne paged Defendant to her office. (Dkt.

---

hearing on that motion for Tuesday, April 14, 2020. *See Williams v. Fed. Bureau of Prisons*, Case No. 1:20-cv-00890-RC, Dkt. 35 (D.D.C. Apr. 7, 2020).

105 at ¶ 5). When Defendant arrived, Ms. Payne called Director Burk on speaker phone, but Director Burk asked Defendant to pick up the phone so they could speak without Ms. Payne and the other case manager in the office hearing the full conversation. (*Id.*). Defendant picked up the phone, and Director Burk told Defendant that his petition was denied, and that if he was not happy at Hope Village, he had the option of returning to prison. (*Id.*). She also told him that if he had a medical emergency, he could call an ambulance. (*Id.*). Ms. Payne later confirmed to Defendant, in front of other Hope Village staff, that Director Burk had denied the petition. (*Id.*).

On March 26, 2020, U.S. Attorney General William Barr issued a directive to the BOP's Director that the bureau "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." William P. Barr, Attorney General, Memorandum for Director of Bureau Prisons: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020). Defendant drafted a second letter on Friday, March 27, 2020, again asking for release to home confinement. (Dkt. 99-6; Dkt. 105 at ¶ 6). Defendant submitted the letter to Ms. Payne, who told him she would make a copy for him before submitting it. (Dkt. 105 at ¶ 6). On Monday, March 30, 2020, Defendant followed up about the letter, and another case manager, Ms. Queen, made a copy of the letter for him and told him she would submit the original. (*Id.*). Defendant represents that "[u]pon information and belief, Ms. Queen submitted the petition that day." (*Id.*).

Later in the day on March 30, 2020, Mr. Wiggins, a social worker, paged Defendant to his office. (*Id.* at ¶ 7). When Defendant arrived, Mr. Wiggins called Director Burk, and

Defendant picked up the phone. (*Id.*). Director Burk "expressed confusion" as to why Defendant had submitted another petition for release after she had already denied the first petition. (*Id.*). Defendant explained that he had resubmitted the petition because the Attorney General had updated the BOP policy and modified the release criteria, which further warranted his release. (*Id.*). Director Burk again denied Defendant's petition and told Defendant he was not eligible for release. (*Id.*). Defendant spoke with Ms. Queen about the call, who explained that Director Burk would have had to obtain the denial from BOP before communicating that the petition was denied. (*Id.*).

On April 1, 2020, Defendant was called into the front office, where Ms. Queen asked Defendant to speak with Robert Emerson, the Program Director at Hope Village ("Director Emerson"). (*Id.* at ¶ 8). After Defendant arrived at Director Emerson's office, Director Emerson "conveyed to [Defendant] that he was upset with [Defendant]'s petitions for release." (*Id.* at ¶ 9). Defendant explained why he thought he should be released, and Director Emerson responded that he cannot change the law. (*Id.*). Director Emerson also directed Defendant to stop trying to be released and that further efforts would constitute "staff harassment." (*Id.*). As a result of this conversation and the conversations with Director Burk, Defendant "believed that his petitions had been fully and finally denied, and that if he pursued his petitions any further he could face disciplinary action." (*Id.* at ¶ 10).

On April 8, 2020, Defendant's roommate at Hope Village was taken to the hospital by ambulance and tested for COVID-19 before returning to their room around midnight. (Dkt. 101 at 1). The roommate was then moved out of the room and into quarantine. (*Id.*).

Defendant filed the instant Emergency Motion on April 7, 2020 (Dkt. 99).[3] The Government filed its opposition on April 9, 2020. (Dkt. 102). In its opposition, the Government makes no attempt to contradict Defendant's claims concerning his interactions with personnel and employees at Hope Village—in other words, Defendant's version of events on that front remains uncontradicted. Instead, the Government contends that Defendant has failed to exhaust his administrative remedies, that the Government has forwarded Defendant's motion to the BOP General Counsel's Office and he should await a determination about his request for release from the BOP, and that Defendant has not demonstrated extraordinary and compelling reasons for his release. (Dkt. 102).

A telephonic oral argument was held on April 10, 2020 (Dkt. 104), after which Defendant submitted a supplemental declaration concerning his administrative exhaustion of remedies, as requested by the Court. (Dkt. 105). The Court issued an Order granting Defendant's Emergency Motion that same day. (Dkt. 106).

## DISCUSSION

### I. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at

---

[3] Defendant alternatively sought habeas relief pursuant to 28 U.S.C. § 2241 (Dkt. 99 at 13-16), but the Government correctly points out that this Court does not have jurisdiction over Defendant's habeas claim as he is not incarcerated in this District. (Dkt. 102 at 12). *See* 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 444-45 (2004).

*1 (S.D.N.Y. Jan. 15, 2020). The compassionate release statute, implemented as part of the First Step Act,[4] provides for such an exception, stating as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Thus, relief is appropriate pursuant to § 3582(c)(1)(A) under the following conditions: (1) a defendant satisfies the exhaustion requirement of the statute; (2) the factors set forth at 18 U.S.C. § 3553(a) support modification of the prison term; (3) extraordinary and compelling reasons warrant a reduction of the prison sentence; and (4) the reduction in the prison sentence is consistent with the Sentencing Commission's policy statements.

## II. <u>Exhaustion</u>

The Government contends that Defendant has failed to comply with the mandatory statutory exhaustion requirement set forth in § 3582(c)(1)(A), and as a result this Court is

---

[4] "The procedural vehicle before the Court—a prisoner-initiated motion for compassionate release under § 3582(c)(1)(A)—was added in December 2018. Prior to the 2018 amendment, the sole means of adjudication under § 3582(c)(1)(A) was pursuant to a motion by the BOP." *United States v. Monzon*, No. 99CR157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020).

without authority to consider Defendant's request. (Dkt. 102 at 2-8). Defendant contends that he has exhausted administrative remedies, or alternatively any failure to do so should be excused. (Dkt. 99 at 11-13).

Courts within this Circuit are split as to whether the exhaustion requirement of § 3582(c)(1)(A) may be excused under the circumstances presented by the COVID-19 pandemic, or whether it must be strictly enforced. *Compare United States v. Roberts*, No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) ("[T]he Court must abide by Congress's choice, given Section 3582(c)'s clear command that the Court 'may not' grant compassionate release except under the conditions Congress prescribed." (footnote omitted)), *and United States v. Gross*, No. 15-CR-769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020) ("[T]he case for carving out an equitable exception [to § 3582(c)(1)(A)] is weak."), *and United States v. Monzon*, No. 99CR157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020) (denying motion for release for failure to exhaust), *with United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *3 (D. Conn. Apr. 8, 2020) (waiving exhaustion requirement of §3582(c)), *and United States v. Perez*, __ F. Supp. 3d __, No. 17 CR. 513-3 (AT), 2020 WL 1546422, at *2-3 (S.D.N.Y. Apr. 1, 2020) (same).

The Court need not resolve whether the exhaustion requirement of § 3582(c)(1)(A) can be disregarded given the current COVID-19 pandemic, because even if the exhaustion requirement is not subject to "judge-made exceptions," *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016), the law is well-established that even statutory exhaustion requirements—so long as not jurisdictional in nature—are subject to the doctrines of waiver and equitable

estoppel. Here, the Court finds that the uncontroverted facts in the record permit invocation of the doctrine of equitable estoppel so as to prevent the Government from asserting exhaustion as a bar to the Court's authority to grant compassionate release.

As a preliminary matter, the Court must address whether § 3582(c)(1)(A) is a claim-processing rule or jurisdictional provision. "The Supreme Court has cautioned against the overuse of the term 'jurisdiction' or 'jurisdictional,' and has instructed that 'subject-matter jurisdiction' should delineate the class of cases 'falling within a court's adjudicative authority.'" *United States v. Johnson*, 732 F.3d 109 (2d Cir. 2013) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). "[W]hen Congress does not rank a [prescription] as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1850 (2019) (second alteration in original) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006)). "Among the types of rules that should not be described as jurisdictional are what we have called 'claim-processing rules.' These are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

While the Second Circuit has not specifically addressed whether § 3582(c)(1)(A) presents a jurisdictional bar, it has strongly indicated that another subsection, 18 U.S.C. § 3582(c)(2), does not confer jurisdiction or bar claims on jurisdictional grounds. In *Johnson*, 732 F.3d 109, the Circuit found that "[b]ecause [the defendant]'s motion presented a nonfrivolous claim requiring interpretation of section 3582(c)(2) and the Commission's Guidelines and policy statements, it arose under federal law, and subject

matter jurisdiction was conferred by 28 U.S.C. § 1331." *Id.* at 116 n.11 (citation omitted); *see United States v. Sandoval-Flores*, 665 F. App'x 655, 656 n.1 (10th Cir. 2016) (noting "that there appears to be both an intra-circuit and inter-circuit split on the question of whether statutory ineligibility for § 3582 relief is jurisdictional" and citing *Johnson* for the proposition that "[t]he Second Circuit has . . . held that § 3582 ineligibility is nonjurisdictional"). The Court sees no reason why the logic of *Johnson* would not apply here: Defendant asserts a nonfrivolous claim requiring interpretation of § 3582(c)(1)(A) and BOP regulations, which pursuant to *Johnson* confers federal question jurisdiction by 28 U.S.C. § 1331. Although *Johnson* was issued before the First Step Act was passed, courts have decided the jurisdictional issue based on the first clause of § 3582(c), which was unaltered by the First Step Act. *See, e.g.*, *United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015) ("Nor is subsection (c) phrased in jurisdictional terms. It begins: 'The court may not modify a term of imprisonment once it has been imposed,' with exceptions then specified.").

District courts in this Circuit have recognized that § 3582(c)(1)(A) is not jurisdictional and can be waived, and the Government itself has taken that position in other cases. *See United States v. Gentille*, No. 19 CR. 590 (KPF), 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020) ("The Court agrees with the Government that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, but rather is a claims-processing rule that the Government can waive by failing to raise an exhaustion argument."); Letter Response, *United States v. Jasper*, No. 18-CR-390-18 (PAE), Dkt. 440 (S.D.N.Y. Apr. 6, 2020) ("Although the defendant has not exhausted her administrative remedies pursuant to 18

U.S.C. § 3582(c)(1)(A), based on the particular circumstances of this case, the Government has concluded that it is appropriate to waive the exhaustion requirement."); *see also Roberts*, 2020 WL 1700032, at *1 ("And although the Government has taken the view that the requirements can be waived, and has exercised its discretion to waive them in other cases based on the threat of COVID-19, it has—for whatever reason—elected not to do so here." (citations omitted)). In light of *Johnson*, the decisions of other courts in this Circuit, and the Supreme Court's repeated cautioning against the use of a "jurisdictional" label for procedural prescriptions, *see, e.g.*, *Davis*, 139 S. Ct. at 1848-50; *Shinseki*, 562 U.S. at 435, the Court finds that the exhaustion requirement of § 3582(c)(1)(A) is a claim-processing rule, not a jurisdictional bar.

Because § 3582(c)(1)(A) is a claim processing rule, it is subject to the principles of waiver and equitable estoppel. *See Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir. 1996) (holding that the administrative exhaustion requirement "is analogous to a statute of limitations and is, therefore, considered subject to waiver, estoppel, and equitable tolling"); *see also Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002) ("This timeliness requirement is not jurisdictional, and the filing deadline is subject to waiver, estoppel, and equitable tolling."). Other district's United States Attorney's offices have, in certain cases, commendably elected to waive any argument about exhaustion under § 3582(c)(1)(A) in light of the urgency created by the COVID-19 pandemic. *See*, *e.g.*, *Gentille*, 2020 WL 1814158, at *3; *United States v. Powell*, Case No. 1:94-cr-00316 (ESH), 2020 WL 1698194, at *1 (D.D.C. Mar. 28, 2020) (government did not oppose 55-year old asthma sufferer's motion for compassionate release, where he had 3 months left on 262-month

- 11 -

sentence for violent crimes, including bank robbery). However, this District's United States Attorney's office elected not to exercise its discretion and adopt such an approach in this case. As a result, the facts of this case do not support a finding of waiver, and the Court turns to whether equitable estoppel may be invoked.

Equitable estoppel is only available against the Government "in the most serious circumstances, and is applied with the utmost care and restraint." *Rojas-Reyes v. I.N.S.*, 235 F.3d 115, 126 (2d Cir. 2000) (internal quotations and citations omitted). "Courts should invoke the doctrine against the Government 'only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct.'" *Pollock v. Chertoff*, 361 F. Supp. 2d 126, 134 (W.D.N.Y. 2005) (quoting *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir. 1994)).

This is one of those unique cases. The Court finds that even if Defendant has thus far failed to meet the exhaustion requirement of § 3582(c)(1)(A), the circumstances of this case demand the application of equitable estoppel to prevent the Government from asserting exhaustion as a defense. Defendant has sufficiently established that the directors and personnel of Hope Village made misrepresentations to him upon which he reasonably and detrimentally relied. By contracting with Hope Village and placing Defendant in custody at that facility, the BOP has placed these Hope Village personnel out front as its representatives who interface with prisoners, such as Defendant, and the record demonstrates that the BOP allowed Hope Village to handle the submission and administration of decisions on petitions for release, which is exclusively a public

function—indeed, the Government has submitted nothing disputing these facts or suggesting that the Hope Village personnel were not authorized to accept Defendant's petitions for release. *See Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061 KAM LB, 2014 WL 1276479, at *8 (E.D.N.Y. Mar. 27, 2014) ("[A] private entity and its employees may only be deemed to have acted under color of law if they perform functions traditionally held exclusively in the province of the government." (emphasis omitted)); *cf. West v. Atkins*, 487 U.S. 42, 49-50 (1988) ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State."). The record before the Court shows that after Defendant submitted two petitions for release to Hope Village, it was represented to him that the BOP had denied his request for release. (Dkt. 105 at ¶¶ 5-7). Additionally, it is uncontroverted that Hope Village Directors Emerson and Burk implicitly if not expressly threatened Defendant—with Director Burk telling Defendant he could return to prison if he was not satisfied with Hope Village and, even more egregiously, Director Emerson directing Defendant to cease any efforts to be released or else he would be engaging in "staff harassment." (*Id.* at ¶¶ 5, 9). As a result of these communications, Defendant believed his petitions had been fully and finally denied. (*Id.* at ¶ 10).

However, Defendant arguably had further administrative rights to appeal. *See* 28 C.F.R. § 542.15 ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form

(BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response."). Indeed, upon receiving Defendant's Emergency Motion, the Government submitted the motion to the BOP's General Counsel's office who is now purportedly undertaking a review of the request (thus suggesting that the Government believes Defendant is now at the final stage of the exhaustion requirements).

Under the circumstances, it was reasonable for Defendant, a prisoner without knowledge of the administrative workings of BOP, to believe the representations of two directors of Hope Village, the directive by Director Emerson to stop trying to be released, and the representation that further attempts to ask for release would be considered staff harassment, meant his petitions had been fully and finally denied. Moreover, the misrepresentations were detrimental—it resulted in Defendant being denied his right to promptly appeal the decisions on his petitions, which could have led to his earlier release. *See Heath v. Saddlemire*, No. 96-CV-1998, 2002 WL 31242204, at *4 (N.D.N.Y. Oct. 7, 2002) (prison officials' misrepresentations regarding proper procedures for filing grievances estop defendants from claiming non-exhaustion with respect to inmate who then follows those incorrect procedures).

The Court also finds Defendant has established that the Government, through its Hope Village representatives, engaged in affirmative misconduct. The BOP now contends that it had no record of Defendant's request to be released. (Dkt. 102 at 2). Yet, Director Burk told Defendant his petitions had been denied, which even a Hope Village case manager understood to mean that the BOP had denied the petitions, and Director Emerson told Defendant that further efforts to petition for release would constitute staff harassment.

As a result, these Hope Village directors prevented Defendant from pursuing the administrative rights Defendant was entitled to by misrepresenting the status of his petitions for release and threatening him with disciplinary conduct. *See Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004) (threats or other inhibiting conduct may estop defendants from asserting the affirmative defense of non-exhaustion). Again, the record is uncontroverted with respect to Defendant's version of events in this regard.

Making affirmative misrepresentations to a prisoner with preexisting health conditions about his right to seek release in the middle of a worldwide pandemic and threatening him for trying to invoke that right constitutes special circumstances so as to compel the application of equitable estoppel. *See, e.g.*, *Sandlin v. Poole*, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008) (finding "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward [prisoner]'s appeals" support estopping prison officials' reliance on exhaustion defense); *Rivera v. Goord*, 253 F. Supp. 2d 735, 747 (S.D.N.Y. 2003) ("[A] plaintiff may assert estoppel, and exhaustion may be excused, if he has been led to believe that an incident was not a grievance matter and would be otherwise investigated or that filing a grievance would be futile."). These are unique and unusual times, and this is one of those rare cases where the circumstances warrant invocation of equitable estoppel. Accordingly, the Court finds that the Government is estopped from arguing that Defendant failed to adhere to the exhaustion requirements of § 3582(c)(1)(A).

## III. Merits of Defendant's Request for Compassionate Release

Having resolved the issue of whether Defendant's application is barred by the statute's exhaustion requirement, the Court now turns to the merits of Defendant's request for compassionate release. The Court easily concludes that consideration of the factors set forth at 18 U.S.C. § 3553(a) and the Sentencing Commission's policy statements support modification of the prison term, and extraordinary and compelling reasons warrant a reduction of the prison sentence.

The circumstances with respect to COVID-19, Defendant's personal health, and the precarious situation at Hope Village, lead to the inescapable conclusion that extraordinary and compelling reasons justify a reduction in Defendant's sentence. While all prisons undoubtedly present challenges in terms of promoting social distancing and maintaining the sanitization called for to halt the spread of this disease, the situation at Hope Village appears particularly dire. Defendant's own roommate was rushed to the hospital on suspicions of COVID-19, but then incredibly placed back into the room he shares with Defendant before being quarantined. The BOP contract with Hope Village is set to expire at the end of this month, and the record before the Court suggests that the facility is recklessly failing to take even the basic steps necessary to protect against the spread of this disease. Defendant suffers from asthma, placing him at an increased risk of falling seriously ill from COVID-19. And this pandemic itself is unprecedented in modern history, presenting "a clear and present danger to free society for reasons that need no elaboration." *United States v. Hernandez*, No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y.

Apr. 2, 2020). If the combination of these circumstances does not rise to the level of extraordinary and compelling reasons, it is difficult to envision what could.

In its opposition, the Government attempts to argue that this case does not present extraordinary and compelling reasons, relying on the definition of "extraordinary and compelling" set forth in Application Note 1 of U.S.S.G. § 1B1.13. (Dkt 102 at 10-11). Granted, the Application Note does not reference a worldwide pandemic caused by a deadly virus where a defendant at a heightened risk is housed in a facility appearing to exhibit a callous disregard for the health and safety of its residents. But the circumstances described in the Application Note are not all-inclusive, and the Court can safely conclude that the Sentencing Commission did not envision these extraordinary times when drafting the Application Note.

In terms of the § 3553(a) factors, and the Sentencing Commission's policy statement as set forth at U.S.S.G. § 1B1.13, a reduction in Defendant's sentence is not inconsistent with those considerations. Defendant has served his time in prison, he is coming to an end of the incarceration sentence, and under the circumstances his time at this halfway house appears to be serving no useful purpose. Defendant had a remarkable history prior to his offense of conviction, he has no criminal history, he does not present a danger to the community, and he has a supportive family with whom he will reside once released (and whose residence has already been approved by the United States Probation Office (Dkt. 99-5)).

In sum, the Court finds that the current circumstances merit compassionate release under 18 U.S.C. § 3582(c)(1)(A). As a result, Defendant's prison sentence is hereby

reduced to time served, and his supervised release term of three years will commence immediately with conditions as noted in the original judgment (Dkt. 86) and additional conditions as noted in the Court's Order entered on April 10, 2020 (Dkt. 106).

## **CONCLUSION**

For the foregoing reasons, Defendant's Emergency Motion for Release (Dkt. 99) is granted.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: April 13, 2020
       Rochester, New York